UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ARMANDO HERNANDEZ JIMENEZ, individually and
on behalf of all others similarly situated,

                                       Plaintiff,

                -against-

GREEN OLIVE INC. and MOHAMED NAJI SALEH,
as an individual,

                                       x
                            Defendants.
-------------------------------------------------------------------

**REPORT AND
RECOMMENDATION**

23-CV-8805
(Donnelly, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

        Plaintiff Armando Hernandez Jimenez, individually and on behalf of others similarly situated, commenced this action on November 30, 2023, alleging that his former employers, Defendants Green Olive Inc. ("Green Olive") and its owner and operator Mohamed Naji Saleh ("Mr. Saleh") (collectively, "Defendants"), failed to pay him overtime wages for work performed in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and New York Labor Law ("NYLL") §§ 652 *et seq.*, failed to provide him with spread-of-hours compensation in violation of NYLL §§ 650 *et seq.*, and failed to provide him with wage statements and notices in violation of NYLL §§ 195 (1), 195 (3). *See generally* Dkt. No. 1.

        Currently pending before this Court, on a referral from the Honorable Ann M. Donnelly, United States District Judge, is Plaintiff's Motion for Default Judgment ("Plaintiff's Motion"). Dkt. No. 14; *see also* April 3, 2024 Referral Order.

        For the reasons set forth below, this Court respectfully recommends that Plaintiff's Motion be granted in part and denied in part. Specifically, this Court respectfully recommends that: (1) a default judgment should be entered jointly and severally against Defendants Green Olive Inc. and Mohamed Naji Saleh; and (2) Plaintiff should be awarded $46,224.62 in damages, made up of: (a)

$18,720.00 for unpaid overtime wages; (b) $18,720.00 in liquidated damages; (c) post-judgment interest as set forth in 28 U.S.C. § 1961(a); (d) an award of attorneys' fees totaling $7,852.50; and (e) an award of costs of $932.12. Additionally, this Court respectfully recommends that Plaintiff's spread-of-hours claim pursuant to the NYLL be denied. Finally, this Court respectfully recommends that Plaintiff's fourth and fifth causes of action be dismissed for lack of standing.[1]

## I.   **Background**

The following facts are taken from the collective action Complaint, Plaintiff's Motion for Default Judgment, and the attachments filed in support of Plaintiff's Motion; the facts are assumed to be true for the purposes of this motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor); *see also BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2023 WL 8853704 (E.D.N.Y. Dec. 22, 2023), *report and recommendation adopted*, Text Order (E.D.N.Y. Jan. 9, 2024) (same); *Doe v. Hyassat*, No. 18-CV-6110 (PGG) (OTW), 2024 WL 1955354 (S.D.N.Y. May 3, 2024) (same).

### A.   **Factual Allegations**

Plaintiff is a former employee at Green Olive, a domestic business organization registered and authorized to do business in the State of New York which has a principal place of business at 80-45 Kew Gardens Road, Rd 3, Kew Gardens, New York 11415. *See* Dkt. No. 1, at ¶¶ 8-9. Plaintiff currently resides in Woodside, New York. *Id.* at ¶ 7. At all relevant times, Green Olive has been "an enterprise engaged in interstate commerce," by purchasing goods and supplies, having employees "handle, sell, or otherwise work with" goods intended for or produced through

---

[1] Emily Petermann, a judicial intern and second-year law student at the Elisabeth Haub School of Law at Pace University, is gratefully acknowledged for her assistance in the research and drafting of this Report and Recommendation.

interstate commerce, and "has had annual gross volume of sales of not less than $500,000.00." *Id.* at ¶ 19.

Mr. Saleh, the owner of Green Olive and the sole day-to-day operator of Green Olive, has the authority to hire and fire employees, oversaw daily operations, controlled terms and conditions of employment, determined rates and methods of compensation, and maintained employment records. *Id.* at ¶¶ 11-17. Mr. Saleh is also Green Olive's sole authorized agent. *Id.* at ¶ 11. Defendants were "engaged in interstate commerce, and/or in the production of goods intended for commerce, and handle, sell and otherwise work with goods and material that have been moved in or produced for commerce by any person." *Id.* at ¶¶ 19, 47.

According to the Complaint, Plaintiff worked for Defendants "from in or around August 2022 until in or around July 2023 [] as a food preparer, cook, cleaner, and stocker, along with other miscellaneous duties performed for Defendants." *Id.* at ¶ 20. Plaintiff worked from approximately 7:00 a.m. to 5:00 p.m. three (3) days per week and from approximately 7:00 a.m. to 6:00 p.m. two (2) days per week. *Id.* at ¶ 22. Plaintiff worked five (5) days a week, totaling around fifty-two (52) hours per week. *Id.* at ¶¶ 22-23.

For work performed, Plaintiff alleges that he was paid a "flat weekly rate" of approximately $800.00 per week for all hours worked during his employment with Defendants. *Id.* at ¶¶ 21-24. Plaintiff also alleges that Defendants failed to remit overtime wages at a rate of "time and a half" for hours worked in excess of forty (40) hours per week. *Id.* at ¶ 25. Further, noting that he worked "in excess of ten (10) or more hours per day approximately two (2) days per week," Plaintiff asserts that Defendants failed to remit spread-of-hours wages as required by state law. *Id.* at ¶ 26. Finally, Plaintiff alleges that "Defendants willfully failed to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment as required

by the FLSA and NYLL." *Id.* at ¶ 27. Similar purported failures also included the failure to provide Plaintiff with a wage notice (*id.* at ¶ 28) and wage statements (*id.* at ¶ 29).

Plaintiff also asserts claims on behalf of a putative collective class composed of "[a]ll persons who are or have been employed by the Defendants as food preparers, cooks, cleaners, stockers, or other similarly titled personnel with substantially similar job requirements and pay provisions, who were performing the same sort of functions for Defendants, other than the executive and management positions, who have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay required minimum and overtime wage compensation." *Id.* at ¶ 33. According to Plaintiff, Defendants employed "approximately 10 or more employees" who, during the relevant periods, were "subjected to similar payment structures*." Id*. at ¶¶ 33-34.

### B.    Procedural History

Plaintiff filed the Complaint on November 30, 2023. *See* Dkt. No. 1. On November 30, 2023, the Clerk of Court issued summonses for all Defendants. Dkt. No. 8. Plaintiff properly served Green Olive on December 12, 2023 by effecting service upon the Secretary of State of the State of New York. Dkt. No. 10-2. Plaintiff properly served Mr. Saleh on December 12, 2023. Dkt. No. 10-1. No answers or responses have been interposed by Defendants.

On January 16, 2024, Plaintiff requested a Certificate of Default from the Clerk of Court and submitted two affidavits of service in support. Dkt No. 11. On January 19, 2024, the Clerk of Court entered a default as to all Defendants noting that Defendants have "not filed an answer or otherwise moved with respect to the Complaint herein." Dkt. No. 12. On January 22, 2024, Plaintiff served the Certificate of Default to Green Olive and Mr. Saleh via first-class mail at

Defendants' principal place of business, 80-45 Kew Gardens Road, Kew Gardens, New York, 11415.  *See* Dkt. No. 13; *cf.* Dkt. No. 1, at ¶ 8 (noting Green Olive's business address).

On February 1, 2024, Plaintiff filed a Motion for Default Judgment.  Dkt. No. 14.  The Motion for Default Judgment was accompanied by (1) a copy of the Complaint (Dkt. No. 15-1); (2) affidavit of personal service of process as to Green Olive (Dkt. No. 15-2); (3) affidavit of personal service of process as to Mr. Saleh (Dkt. No. 15-3); (4) affidavit of service of process upon the Secretary of State of the State of New York as to Green Olive (Dkt. No. 15-4); (5) Certificates of Default (Dkt. No. 15-5); (6) affirmation of service for the Certificates of Default (Dkt. No. 15-6); (7) Plaintiff's damages calculations (Dkt. No. 15-7); (8) a proposed Default Judgment Order (Dkt No. 15-8); and (9) a memorandum of law in support of Motion for Default Judgment (Dkt. No. 16).

Plaintiff seeks default judgment jointly and severally for unpaid overtime wages in the amount of $18,720.00; unpaid spread-of-hour wages in the amount of $1,560.00; liquidated damages in the amount of $20,280.00; $10,000.00 for failing to provide a wage statement and wage notice in violation of NYLL § 195; amounting in all to $50,560.00.  Dkt. No. 15-1; 15-7.  Plaintiff also seeks an award attorney's fees, costs, and statutory post-judgment interest.  Dkt. No. 15-8.

Plaintiff also filed an Affidavit of Service of Plaintiff's Motion on February 1, 2024, noting that service was effected upon all Defendants at 80-45 Kew Gardens Road, Kew Gardens, New York 11415, via first-class mail.  *See* Dkt. No. 17.

On April 3, 2024, Judge Donnelly referred Plaintiff's Motion to the undersigned.

On July 18, 2024, this Court ordered "Plaintiff to provide the Court with (i) biographical information for all counsel and staff delineating their professional experiences in support of the

requested fee awards and (ii) a computation of the total hours expended by counsel in this litigation along with all supporting records." *See* July 18, 2024 Text Order.  The July 18, 2024 order also stated that Plaintiff's Motion "does not comply with Local Rule 55.2(c), which requires that copies of [] motion papers be mailed to an individual defendant's last known residential address" and that Plaintiff's Motion "fails to comply with the Servicemembers Civil Relief Act by failing to independently confirm with the Department of Defense whether Mr. Saleh is in active miliary service." *Id.*  The Court ordered Plaintiff to supplement his pending Motion with an affidavit (along with all supporting exhibits) curing the deficiencies identified herein." *Id.*

On July 22, 2024, Plaintiff filed an Affidavit of Service reflecting that Plaintiff's Motion, including supporting affirmations and exhibits and memorandum of law, were mailed to Mr. Saleh's residential address at 8715 Dennison Street, Detroit, Michigan, 48210-1829.  Dkt. No. 20.

On July 25, 2024, Plaintiff supplemented the pending Motion for Default Judgment with counsel's billing records and biography, exhibits in support of his request for an award of costs, and a Department of Defense affidavit pursuant to the Servicemembers Civil Relief Act.  Dkt. No. 21.

## II.    <u>Legal Standards</u>

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).  At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a); *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023) ("[W]hen a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall

enter a default." (citing Fed. R. Civ. P. 55(a)). "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(1)).

At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). To "enter or effectuate judgment," the Court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). The plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015)).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly

established." *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (quotations and citation omitted).  The Court may also "consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (cleaned up), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010).  "Courts have significant discretion in granting default judgments and consider the following factors: (1) whether the defendant's default was willful; (2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Canon U.S.A., Inc. v. Sysorex Gov't Servs., Inc.*, No. 23-CV-8001 (DLI) (LGD), 2024 WL 1914347, at *3 (E.D.N.Y. May 1, 2024) (internal citations omitted); *see also Enron Oil Corp.*, 10 F.3d at 96; *Franco*, 2010 WL 3780972, at *2 (listing factors).

## III.   Discussion

### A.   Jurisdiction and Venue

The Court "must satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants." *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019); *see Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

### i.   Subject Matter Jurisdiction

Federal district courts have original subject matter jurisdiction over all civil actions "arising under" the "laws . . . of the United States."  28 U.S.C. § 1331.  Plaintiff's first cause of action

alleges a violation of the overtime wage provisions of the FLSA.  *See* Dkt. No. 1 ¶¶ 44-50.  Nothing in the record suggests that Plaintiff's FLSA claims are immaterial, made solely for the purpose of obtaining jurisdiction, wholly insubstantial, or frivolous.  *Cf. A&B Alt. Mktg. Inc. v. Int'l Quality Fruit Inc.*, 35 F.4th 913, 915 n.2 (2d Cir. 2022).  This action thus arises under the laws of the United States, which gives the Court subject matter jurisdiction over this action.  *See, e.g., Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 345 (E.D.N.Y. 2014).

The Court also has supplemental jurisdiction over Plaintiff's second and third causes of action, which seek to recover for unpaid overtime wages and failure to remit "spread of hours" payments under the NYLL.  Supplemental jurisdiction extends to state law claims that so relate to the claims within the court's original jurisdiction that they form part of the same case or controversy.  28 U.S.C. § 1367(a).  Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact."  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)).  Claims derive from a common nucleus of operative fact when the facts underlying the claims "substantially overlap[ ]."  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).  Here, supplemental jurisdiction clearly extends to the second and third claims because they virtually overlap with Plaintiff's first claim, which seeks to recover for the same violations under the FLSA.  *See* Dkt. No. 1 ¶¶ 51-57.

The Court, however, ultimately lacks subject matter jurisdiction over Plaintiff's fourth and fifth causes of action—in which Plaintiff alleges that Defendants violated the wage statement requirements of the NYLL and the notice and recordkeeping requirements of the NYLL (*id*. ¶¶ 58-63)—because Plaintiff lacks standing to pursue those claims in federal court.

Article III of the United States Constitution restricts federal court power to hearing "cases" and "controversies." U.S. Const. Art. III, § 2, cl. 1. A case or controversy cannot exist if the plaintiff lacks a personal stake, or "standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "To establish [Article III] standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Standing is not "dispensed in gross." *TransUnion*, 594 U.S. at 431. Rather, the plaintiff must show standing separately for each claim asserted. *Id.*

"[S]tanding is a threshold matter of justiciability, and if a plaintiff lacks standing to sue, the Court has no choice but to dismiss the plaintiff's claim for lack of subject-matter jurisdiction." *Dunston v. Piotr & Lucyna LLC*, No. 21-CV-6402 (AMD) (SJB), 2023 WL 5806291, at *4 (E.D.N.Y. July 26, 2023), *report and recommendation adopted*, No. 2023 WL 5806253 (E.D.N.Y. Sept. 7, 2023) (citing *Tavarez v. Moo Organic Chocolates, LLC*, No. 21-CV-9816 (VEC), 2022 WL 3701508, at *4 (S.D.N.Y. Aug. 26, 2022)). "Like all subject matter issues, standing can be raised *sua sponte*." *Dunston*, 2023 WL 5806291, at *4 (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)).

"[A] plaintiff must establish Article III standing for *all* of his claims, whether or not the Court also has supplemental jurisdiction." *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM) (RML), 2023 WL 2206568, at *3 (E.D.N.Y. Feb. 24, 2023) (emphasis in original). While a court may hear state claims if they "derive from a common nucleus of operative facts" (*id.* (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966))), a Court cannot "discern

of speculate which of the 'operative facts' establish an injury to [a plaintiff] on his NYLL wage notice and wage statement claims." *Id.*

Here, Plaintiff did not allege facts linking any legally cognizable injury that he personally experienced to Defendants' purported failure to provide wage statements or Defendants' purported failure to provide Plaintiff with notice of his rate of pay, regular pay day, and such other information as required by the NYLL. The Complaint merely alleges that Defendants failed to comply with these statutory mandates. *See* Dkt. No. 1, at ¶¶ 27-31; 58-63. Indeed, since the Supreme Court issued its decision in *TransUnion*, "courts throughout the Second Circuit have [] found no standing in cases, such as the instant case, where [p]laintiffs have not established any injury traceable to violation of the wage notice and statement requirements." Plaintiff's theory as to *how* he was injured by Defendants' failure to provide the required documents is speculative at best. Plaintiff argues that "Defendant's alleged willful failures to provide Plaintiff with [wage statements and wage notices] prevented Plaintiff from being able to calculate his hours worked, [] proper rates of pay, and [overtime pay.]" *Id.* at ¶ 31. Without a concrete show of harm, Plaintiff's argument is entirely speculative.

The case styled *Quieju v. La Jugueria Inc.*, No. 23-CV-264 (BMC), 2023 WL 3073518 (E.D.N.Y. Apr. 25, 2023) is illustrative here. In *Quieju*, the plaintiff, a former restaurant worker, alleged that his former employer violated the FLSA and the NYLL by, *inter alia*, not providing him "with a time-of-hire wage notice nor with the wage statements" under the NYLL. *Id.* at *1. The court held that the plaintiff was unable to show that he had standing to bring these claims. *Id.* The court reasoned that the plaintiff was actually arguing "that *if* defendants had given him the required documents, those documents *would have* informed him that he was not being paid his required wages. Enlightened by that knowledge, plaintiff then *would have* demanded his required

11

wages. Having made such a demand, defendants *would have* then paid him his required wages, and plaintiff *would have* avoided the injury he suffered by the failure to properly pay him." *Id.* at *2. While the plaintiff tried to argue that this implicit analysis demonstrated that the plaintiff had suffered an actual and concrete injury, the court found that "[t]his hypothetical chain of events is not what the Supreme Court means by an 'injury fairly traceable to the allegedly unlawful conduct.'" *Id.* (quoting *California v. Texas*, 141 S. Ct. 2104, 2113 (2021)). "The injury that plaintiff suffered (i.e., defendants' failure to properly pay him) is not an injury he sustained because of a lack of the required documents; it is an injury sustained because his employer violated its obligation to pay minimum wage, overtime, and spread-of-hours pay under other, express requirements of federal and state law." *Quieju*, 2023 WL 3073518 at *2.

Here, as in *Quieju*, Plaintiff has not shown that he suffered a concrete injury resulting from Defendants' purported violations of the NYLL's wage statement and wage notice requirements. Thus, Plaintiff lacks Article III standing to pursue his fourth and fifth causes of action here. *See, e.g.*, *Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc.*, No. 21-CV-2015 (CBA) (MMH), 2024 WL 1342739, at *1 (E.D.N.Y. Mar. 29, 2024) (noting that "Plaintiff lacks standing to pursue his claims that [the defendant] violated the NYLL's wage notice and wage statement provisions because Plaintiff had not adequately pleaded a tangible injury resulting from [the defendant's] failure to provide the required notices"); *Bayne v. NAPW, Inc.*, No. 18-CV-3591 (MKB) (MMH), 2024 WL 1254197, at *6 (E.D.N.Y. Mar. 25, 2024); *Cao v. Flushing Paris Wedding LLC*, No. 20-CV-2336 (RPK) (JAM), 2024 WL 1011162, at *23 (E.D.N.Y. Mar. 9, 2024), *report and recommendation adopted* (Text Order dated Mar. 29, 2024); *Saavedra v. Dom Music Box Inc.*, No. 21-CV-6051 (ENV) (JAM), 2024 WL 208303, at *5 (E.D.N.Y. Jan. 19, 2024), *report and recommendation adopted* (Text Order dated Mar. 13, 2024); *Esquivel*, 2023 WL 6338666, at *11

(dismissing Plaintiff's NYLL wage notice and wage statement claims without prejudice); *Wang v. XBB, Inc.*, No. 18-CV-7341 (PKC) (ST), 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to [the d]efendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim." (citation omitted)); *Francisco v. NY Tex Care, Inc.*, No. 19-CV-1649 (PKC) (ST), 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) ("While those may be technical violations of the NYLL, neither [p]laintiff nor the record demonstrate how those technical violations led to either a tangible injury or something akin to a traditional cause of action[.]").

Because Plaintiff lacks standing, the Court lacks subject matter jurisdiction over his wage notice and wage statement claims under the NYLL.  Accordingly, the Court respectfully recommends that Plaintiff's fourth and fifth causes of action be dismissed without prejudice.

### ii.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant."  *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (citation omitted); *see also BASF Corp.*, 2023 WL 8853704, at *5 ("A court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process.") (internal quotations and citation omitted).

Here, the Court has personal jurisdiction over Defendants.  First, Plaintiff properly served Green Olive, a New York company, by delivering copies of the Summons and Complaint to the New York Secretary of State.  *See* Dkt. No. 10-2; *see also* Fed. R. Civ. P. 4(h)(1)(A); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1).  Plaintiff also properly served Defendant Mr. Saleh by personal service.  *See* Dkt. No. 10-1; *see also* Fed R. Civ. P. 4(e)(1)–e(2)(A); N.Y. C.P.L.R. §

308(1). "[S]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

Second, New York State has general jurisdiction over its residents. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016). Defendant Green Olive is a New York corporation with its principal place of business in Kew Gardens, New York. *See* Dkt. No. 1, at ¶¶ 8-9. New York courts may exercise jurisdiction over corporations formed under its laws and operating within the state. *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG) (PK), 2018 WL 429d2171, at *3 (E.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014)); *see also* N.Y. C.P.L.R. § 301. New York courts may also exercise jurisdiction over non-domiciliary corporations or individuals "who transact business within the state" so long as "the cause of action arises from that transaction." *Licci*, 673 F.3d at 60; *see also* N.Y. C.P.L.R. § 302(a)(1). Defendant Mr. Saleh "serves or served as owner, manager, principal, or agent of [the Corporate Defendant]" and thus, he transacted business in New York. *See id.* at ¶ 10.

Accordingly, this Court may exercise personal jurisdiction over Defendants.

### iii.  Venue

"A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Here, Plaintiff asserts that venue is proper in this District because "a substantial part of the events or omissions giving rise to the claims herein" occurred in the Eastern District of New York. Dkt. No. 1, at ¶ 5. In defaulting, Defendants do not dispute that this District is a proper venue for this action.

Accordingly, this Court respectfully recommends a finding that venue is proper in this District under 28 U.S.C. § 1391(b)(2).

## B.    Procedural Compliance[2]

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Company v. Adweek*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)). "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution." *Fin. Servs. Vehicle Tr. v. Osmeña*, No. 22-CV-7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (internal quotations and citation omitted).

### i.    Service of Process

The Court finds that Plaintiff properly served the Summons and Complaint on each defendant. Federal Rule of Civil Procedure 4(e)(1) permits a party to effect service in accordance with the rules of the state where the district is located or where service is made. As to the Corporate Defendant, state law permits a party to effect service by delivering the summons and complaint to the New York Secretary of State as an agent of the corporation. N.Y. Bus. Corp. Law § 306(b)(1). Here, Plaintiff served Defendant Green Olive with notice of this action by his process server delivering the Summons and Complaint to an agent in the Office of the Secretary of State

---

[2] The Local Rules of the United States District Court for the Southern and Eastern Districts of New York were updated on July 1, 2024. As set forth in Local Rule 1.1, "[t]hese Local Civil Rules take effect on July 1, 2024 [] and govern actions pending or filed on or after that date. For actions pending on the Effective Date, if fewer than 14 days remain to perform an action governed by these Rules, the provisions of the previous Local Rules effective on June 30, 2024 will govern." Thus, the previous Local Rules remain applicable here.

authorized to accept service for Defendant.  Dkt. No. 10-2.  Thus, Plaintiff properly served Green Olive.

As to Defendant Mr. Saleh, state law permits a party to effect service by (1) delivering the summons within the state to a person of suitable age and discretion at the actual place of business of the person to be served and (2) mailing the summons by first class mail to the person to be served at his or her actual place of business, so long as the delivery and mailing occur within twenty days of each other.  N.Y. C.P.L.R. § 308(2).  Here, Plaintiff served Mr. Saleh with notice of this action by his process server delivering the Summons and Complaint to Mr. Saleh's actual place of business at 80-45 Kew Gardens Road, Rd3, Kew Gardens, New York 11415, and leaving those documents with Mr. Saleh personally.  Dkt. No 10-1.  Plaintiff's process server also mailed a copy of the Summons and Complaint by first class mail to the same address.  *Id.*  Thus, Plaintiff properly served Mr. Saleh.

### ii.    Entry of Default

The Court next finds that the Clerk of Court properly issued a Certificate of Default as to each defendant.  Because Green Olive was served on December 12, 2023, it was required to answer or otherwise respond to the Complaint by January 2, 2024.  *See* Dkt. No. 10; Fed. R. Civ. P. 12(a)(1)(A)(i).  Because Mr. Saleh was served on December 12, 2023, he was required to answer or otherwise respond to the Complaint by January 2, 2024.  *See id.*  When Defendants failed to do so, Plaintiff filed a Request for a Certificate of Default.  Dkt. No. 11.   On January 19, 2024, the Clerk of Court—noting that "Defendant Green Olive Inc. [and] Mohamed Naji Saleh [have] failed to appear or otherwise defend this action"—entered a notation of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.  Dkt. No. 12.

### iii.    Local Civil Rule 7.1

Local Civil Rule 7.1 requires that a plaintiff attach to a motion for default (1) a notice of motion specifying "the applicable rules or status pursuant to which the motion is brought", (2) a memorandum of law setting forth "the cases and other authorities relied upon in support of the motion, and (3) supporting affidavits and exhibits containing "factual information and portions of the record necessary for the decision of the motion." *See* L. Civ. R. 7.1. Plaintiff complied with the procedural requirements enshrined in Local Civil Rule 7.1 by filing a notice of motion (Dkt. No. 14), a memorandum of law (Dkt. No. 16), and affidavits and exhibits in support of the motion (*see generally* Dkt. No. 15).

### iv.    Local Civil Rule 55.2

Local Civil Rule 55.2(b) requires that a plaintiff attach to a motion for default the Clerk's certificate of default, a copy of the complaint, and a proposed form of default judgment. Local Civil Rule 55.2(c) requires that all papers submitted in connection with a motion for a default judgment be mailed to the "last known residence" of an individual defendant or "last known business address" of a corporate defendant. L. Civ. R. 55.2(c).

As to Green Olive, the corporate defendant, Plaintiff complied with the procedural requirements enshrined in Local Civil Rule 55.2 by mailing all papers to the Green Olive's last known business address at 80-45 Kew Gardens Road, Rd 3, Kew Gardens, NY 11415. Dkt. No. 15-6.

As to Mr. Saleh, Plaintiff has, ultimately, complied with the procedural requirements enshrined in Local Civil Rule 55.2 by mailing all papers to Mr. Saleh's last known residential address at 8715 Dennison Street, Detroit, Michigan, 48210-1829. *See* Text Order dated July 18, 2024 (raising deficiencies in procedural compliance as to Local Civil Rule 55.2's mailing

requirement); Dkt. No. 20 (curing deficiencies by, *inter alia*, mailing all motion papers to Mr. Saleh's last known residential address).

### v.    Compliance with the Servicemembers Civil Relief Act

The Servicemembers Civil Relief Act ("SCRA") requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. § 3931; *see also Windward Bora, LLC v. Ortiz*, No. 21-CV-04154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *report and recommendation adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022). "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered." *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012); *see also Sudilovskiy v. City WAV Corp.*, No. 22-CV-469 (DG) (RLM), 2022 WL 4586307, at *3 (E.D.N.Y. Sept. 29, 2022). Moreover, the affidavit may not be based on conclusory statements. *See, e.g.*, *Ore v. H & C Cleaning Corp.*, No. 22-CV-20 (AMD) (RER), 2022 WL 19520879, at *4 (E.D.N.Y. Dec. 14, 2022), *report and recommendation adopted*, 2023 WL 2522814 (E.D.N.Y. Mar. 15, 2023) (holding that, where plaintiffs relied on the process server's representation that the server "asked the person spoken to whether defendant was in active military service ... and received a negative reply," and where there was no "indication that [p]laintiffs investigated [the defendant's] military status beyond the process server's question," plaintiffs failed to comply with the requirements of the SCRA). Further, "[t]he court lacks the power to excuse compliance" with the SCRA. *Sudilovskiy*, 2022 WL 4586307, at *3; *see also Uribe v. Nieves*, No. 17-CV-5155 (RRM) (RER), 2018 WL 4861377, at *1 (E.D.N.Y. Sept. 26, 2018).

Here, Plaintiff's process server confirmed that Mr. Saleh was not in active military service by asking him during service "whether he/she was in the military service of the United States Government, or of the State of New York, in which [Mr. Saleh] responded negatively to being in the military service of the United States Government or of the State of New York." Dkt. No. 10-1. But this pre-default "investigation" into Mr. Saleh's military status was insufficient. *See Vergara*, 2020 WL 1034393, at *6; *see also Sudilovskiy*, 2022 WL 4586307, at *3 (noting "process server's statement that he was told by the unidentified person with whom he left the summons and complaint that [defendant] was not in the military service is . . . insufficient" and "a proper non-military affidavit must be based on facts adduced from an investigation conducted after a defendant defaults.").

Further, following the Clerk's entry of default, Plaintiff's counsel averred in his affirmation in support of Plaintiff's Motion that Mr. Saleh is not in the active military service due to the "process server's Affidavit of Service filed on the Court's docket." Dkt. No. 15, at ¶ 9. But where (i) Plaintiff's assertions as to Mr. Saleh's military status improperly relied on the process server's impermissible representations and (ii) Plaintiff's Motion failed to note subsequent investigations to support the process server's representations, this Court could not rely on Plaintiff's affirmation to satisfy the requirements of the Act. *See Sudilovskiy*, 2022 WL 4586307, at *3; *Uribe*, 2018 WL 4861377, at *2.

Accordingly, this Court—on July 18, 2024—ordered Plaintiff to "comply with the [SCRA] by . . . independently confirm[ing] with the Department of Defense whether Mr. Saleh is in active military service." *See* Text Order dated July 18, 2024. On July 25, 2024, Plaintiff filed an affidavit outlining his investigation into Mr. Saleh military status. Dkt. No. 21-3. In support, Plaintiff filed

an exhibit purporting to be a "Status Report Pursuant to Servicemembers Civil Relief Act" issued by the "Department of Defense Manpower Data Center." *Id.* at 2-3.

To comply with the SCRA, Plaintiff may, for example, "obtain a report certifying active-duty military status through the [SCRA] website." *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD) (RER), 2023 WL 375647, at *5 (E.D.N.Y. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023) (citing https://scra.dmdc.osd.mil/scra). "The Court notes that Plaintiff's burden in this regard is not a heavy one, especially since the Department of Defense maintains a Servicemembers Civil Relief Act website for the purposes of, among other things, determining whether an individual is on active duty." *Gordon v. Chambers*, No. 20-CV-696, 2024 WL 1710901, at *7 (E.D.N.Y. Apr. 22, 2024) (quoting *Pinela Jurado v. Sabor Hispano, Inc.*, No. 20-CV-1104 (RPK) (VMS), 2021 WL 11690645, at *7) (internal quotations omitted).

Here, Plaintiff's July 25, 2024 affidavit represents that Mr. Saleh is not in active military service—in compliance with the SCRA. Dkt. No. 21-3. Having assured itself that a default would not be issued against an active servicemember (*Windward Bora, LLC*, 2022 WL 3648622, at *5), this Court proceeds in its analysis of whether a default judgment may be entered as to all Defendants.

In light of the above, the jurisdictional and procedural prerequisites to the entry of a default judgment have been satisfied by Plaintiff. Moreover, Defendants' failure to respond to the Complaint here was willful. Notwithstanding the notice and service described above, Defendants did not respond to the Complaint, did not appear, and have not in any way attempted to defend this action, thus constituting willfulness in the context of default judgment. *See, e.g., Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946 (JS) (AKT), 2015 WL 1299259, at *6 (E.D.N.Y.

Mar. 23, 2015) ("Defendant has not responded to Plaintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way. Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

The Court now turns to whether Plaintiff's factual allegations establish Defendants' liability as a matter of law.

### C.    Liability

#### i.    Statute of Limitations

As a threshold matter, the Court considers whether Plaintiff's claims are timely under the applicable statutes of limitations. *See Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011). The FLSA's statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered 'willful' and the three-year statute of limitations applies." *Rodriguez*, 2011 WL 4962397, at *2 (citing *Blue v. Finest Guard Servs., Inc.*, No. 09-CV-133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010)). The statute of limitations for NYLL claims is six years. *See* NYLL §§ 198(3), 663(3). Both statutes start to run when the employee begins working for the employer. *Rodriguez*, 2011 WL 4962397, at *2 (citation omitted).

Here, Plaintiff filed his initial complaint on November 30, 2023. *See* Dkt. No. 1. Given that Plaintiff was employed by Defendants from approximately August 2022 to approximately July 2023 (Dkt. No. 1 ¶ 7), Plaintiff's claims here are timely.

#### ii.    Whether Defendants are "Employers"

To plead a cause of action under the FLSA, Plaintiff must establish that: (1) the defaulting defendants are employers subject to the FLSA; (2) the plaintiff is an employees within the meaning of the FLSA; (3) the plaintiff's employment relationships were not exempted from the statute; and (4) a violation of one of the statute's provisions. *See Rowe v. CC Rest. & Bakery, Inc.*, No. 17-CV-01423 (CBA)(PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), *report and recommendation adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019).

The FLSA broadly defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The term "person" in this definition may be an "individual" or "any organized group of persons," including corporations. 29 U.S.C. § 203(a).  The FLSA applies to employees who were either (1) engaged in commerce or the production of goods for commerce or (2) employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. §§ 206(a), 207(a).[3]  "To be an 'enterprise engaged in commerce,' the defendant-employer must have (a) an annual gross sales volume of at least $500,000, and (b) 'employees handling, selling or otherwise working on goods or materials that have been moving in or produced for commerce by any person.'"  *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM) (MMH), 2022 WL 875099, at *7 (E.D.N.Y. Mar. 24, 2022) (citing 29 U.S.C. § 203(s)(1)(A)).

Here, Plaintiff alleges the statutory requirements that the Defendants are employers subject to the FLSA under the enterprise coverage standard without providing any specific examples.  *See* Dkt. No. 1, at ¶ 19.  Nonetheless, based on Plaintiff's allegations that Green Olive has an annual gross sales volume of at least $500,000 and Defendants have "employees engaged in interstate commerce, and/or production of goods intended for commerce," (*id.*), the Court can reasonably

---

[3] The NYLL lacks this requirement.  *Gangadharan v. GNS Goods & Servs.*, No. 18-CV-7342 (KAM) (MMH), 2022 WL 824135, at *11 (E.D.N.Y. Mar. 18, 2022).

infer that at least some of the goods and materials used by Defendants have moved or engaged in interstate or international commerce. *See Kilmchak v. Cardona, Inc.*, No. 09-CV-4311 (MKB) (ARL), 2014 WL 3778964, at *5 (E.D.N.Y. Jul. 31, 2014) (noting that several courts in this district have inferred FLSA enterprise coverage based on the nature of the defendant's business notwithstanding such pleading deficiencies and collecting cases).

Furthermore, it is reasonable to infer that a business engaged in food distribution would have products that come from outside of New York. *See, e.g., Cardoza*, 2015 WL 5561033, at *4 ("It is logical to infer that a supermarket's products and produce would have originated outside of New York.").

Finally, while some of Plaintiff's allegations regarding Defendants' status as employers are conclusory, "multiple courts in this district have held that similarly conclusory allegations of enterprise coverage may be accepted on a motion for default judgment where it may be inferred from the type of business enterprise that it was engaged in interstate commerce." *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC) (RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022); *see Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM) (RER), 2021 WL 2401176, at *5 (E.D.N.Y. June 11, 2021) ("[T]he court can reasonably infer that at least some materials handled by the plaintiff-employee have moved or engaged in interstate or international commerce, such as the food, beverages, products, materials, and equipment utilized by the defendants.").

Therefore, this Court finds that Green Olive, and its agent, Mr. Saleh, are employers subject to the FLSA.

    **iii.      Whether Plaintiff was an "Employee"**

An "employee" is likewise broadly defined in the FLSA as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Plaintiff satisfies this definition insofar as he alleges that Defendants employed them in various positions within this statutory meaning. *See generally* Dkt. No. 1; *Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-CV-3372 (CBA) (VMS), 2019 WL 5694104, at *5 (E.D.N.Y. Aug. 16, 2019) (determining that the plaintiff was an "employee" under the FLSA because the complaint alleged that he was employed by the defendants), report and recommendation adopted, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020). Accordingly, Plaintiff is a covered employee under the FLSA.

### iv.        Whether any FLSA Exemptions Apply

Finally, Plaintiff must show that he is not exempt from the FLSA's protections. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015). "[T]he FLSA contains a litany of exemptions." *Id.* (internal quotations omitted); *see* 29 U.S.C. § 213. These include "bona fide executive, administrative, or professional" employees, "outside salesmen," certain seasonal employees, some employees in fishing, agriculture, and small local newspaper employees, among many others. *See id.* An employee's "exempt status depends less on his title, and more on the actual duties performed." *McBeth v. Gabrielli Trucks Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010). "[T]he burden of invoking these exemptions rests upon the employer." *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 394 n.11 (1960)). How the plaintiff spent his or her time is a factual question, but whether the employee's activities trigger one of the FLSA's exemptions is a legal one. *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 129–30 (2d Cir. 2020).

Here, Plaintiff does not allege any facts that would make him exempt under the FLSA or NYLL. Indeed, Plaintiff alleges that he worked at Green Olive as a "food preparer, cook, cleaner,

and stocker." Dkt. No. 1, at ¶ 20.  As a matter of law, such duties do not exempt employees from the FLSA's minimum wage or overtime protections.  *See Brito*, 2022 WL 875099, at *7 ("Plaintiffs' complaint and supporting declarations establish that as a matter of law, the Plaintiffs' jobs as Bakers and Helpers constitute non-exempt employment under the FLSA."); *see also Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09-CV-486, 2011 WL 1431978, at *3-4 (E.D.N.Y. Apr. 14, 2011) (finding that the FLSA regulations did not exempt the plaintiff from the FLSA's protections due to his position as a cook, which did not make him an "executive employee," a "creative professional," or a "learned professional"*); Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 130 (S.D.N.Y. 2011) (certifying a FLSA class including servers, bus-persons, food preparers and dishwashers); *Fasanelli v. Heartland Brewery*, Inc., 516 F. Supp. 2d 317, 320-22 (S.D.N.Y. 2007) (holding that waiters, bartenders, runners and/or bussers were non-exempt employees under the FLSA).  And because Defendants are in default, they have failed to sufficiently invoke any exemptions.  *See Ore v. H & C Cleaning Corp.*, No. 22-CV-20 (AMD) (RER), 2022 WL 19520879, at *9 (E.D.N.Y. Dec. 14, 2022) (holding that statutory exemptions did not apply due to defendants' default), *report and recommendation adopted*, 2023 WL 2522814 (E.D.N.Y. Mar. 15, 2023).  Thus, Plaintiff's duties do not render him an employee exempt from FLSA's minimum wage and overtime protections.

###### v.    Whether the NYLL applies

To prevail on their NYLL claims, Plaintiff must first establish that his employment relationships are covered by the NYLL, which applies to "any person employed for hire by an employer in any employment."  NYLL § 190.  "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badyna*, No. 13-CV-4021 (RRM) (CLP), 2014 WL 4728287, at *6 (E.D.N.Y.

Sept. 23, 2014). NYLL's definition of "employer" is otherwise "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV) (VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status), *report and recommendation adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016).

Because Plaintiff has established an employer-employee relationship with Defendants under the FLSA, he also has established an employer-employee relationship under the NYLL.

### vi.    Whether Defendants are Jointly and Severally Liable

Plaintiff alleges that Defendants are "jointly and severally" liable for the FLSA and NYLL violations. *See* Dkt. No. 15-1 ¶¶ 50, 54.

As noted above, Mr. Saleh is the owner of Green Olive and the sole day-to-day operator of the Green Olive businesses; he has had the authority to hire and fire employees, oversaw daily operations, controlled terms and conditions of employment, determined rates and methods of compensation, and maintained employment records. Dkt. No. 1 at ¶¶ 11-17. Mr. Saleh is also Green Olive's sole authorized agent. *Id.* at ¶ 11. Given the default here, both Mr. Saleh and Green Olive are jointly and severally liable under the FLSA and the NYLL. *See, e.g., Cavalotti v. Daddyo's BBQ, Inc.*, No. 15-CV-6469 (PKC) (VMS), 2018 WL 5456654, at *11 (E.D.N.Y. Sept. 8, 2018) ("As the Court has found that DaddyO's and Mr. Fosdal were jointly Plaintiff's employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any FLSA and NYLL damages award made in Plaintiff's favor"); *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) (finding allegations that an individual defendant "was an owner, partner, or manager," coupled with his default, was sufficient to qualify him as an FLSA

and an NYLL employer, and to impose joint and several liability with corporate defendant for wage law violations); *Shim v. Millennium Grp., LLC*, No. 08-CV-4022 (FB) (VVP), 2010 WL 409949, at *1 (E.D.N.Y. Jan. 27, 2010) (on default judgment, finding both the individual defendants and the corporation to be liable under the FLSA where the complaint contained allegations of actions taken collectively by "Defendants"); *Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (holding that a corporate officer who is considered an employer under the FLSA is jointly and severally liable along with the corporation); *see also Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 129 (E.D.N.Y. 2011) ("Courts in this circuit have held that the same analysis applies when determining whether defendants are jointly liable as employers under the FLSA and the NYLL." (collecting cases)); *Cnty. of Suffolk v. Golden Feather Smoke Shop, Inc.*, No. 09-CV-162 (CBA) (VMS), 2016 WL 4399309, at *2 (E.D.N.Y. Aug. 17, 2016) ("holding the cigarette business and its operator jointly and severally liable for the civil penalties is appropriate here.").

Accordingly, this Court finds that Defendants are jointly and severally liable for Plaintiff's claims.

***

Finding these threshold requirements satisfied, the Court proceeds to consider whether Defendant's alleged conduct violated the FLSA and NYLL.

### vii.    Violations of the FLSA and NYLL

#### a.    Overtime Pay

Plaintiff seeks reimbursement for the overtime wages that he should have received pursuant to the FLSA and NYLL.  *See* Dkt. No.1, at ¶¶ 44-54.  Both the FLSA and NYLL require employers to pay overtime wages equal to one and one-half an employee's regular salary for every hour

worked in excess of forty hours in any given week.  *See* 29 U.S.C. § 207(a); NYLL § 651; 12 N.Y.C.R.R § 142-2.2.  The NYLL characterizes an eight-hour day as a "legal day's work[.]". N.Y. Lab. Law § 160.

The plaintiff has the burden to prove that he was improperly compensated for the work he performed, and the defendant had actual or constructive knowledge of the work.  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).  If the defendant has defaulted, however, the court may presume that the plaintiff's recollection and estimates of the hours he worked are accurate.  *Cabrera v. Canela*, 412 F. Supp. 3d 167, 181 (E.D.N.Y. 2019).  An employer has a non-delegable duty to maintain accurate records of its employees' hours.  *Kuebel*, 643 F.3d at 363. Thus, it would be unfair to require more substantial proof of improper compensation when the defendant is not participating in the case and the plaintiff lacks the ability to obtain the defendant's employment records through discovery.  *See Cabrera*, 412 F. Supp. 3d at 181; *Hart v. Rick's Cabaret Int'l*, Inc., 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records.")

Here, Plaintiff sufficiently establishes that Defendants violated the FLSA and NYLL overtime pay requirement.  *See Martinez v. Golden Flow Dairy Farms Inc.*, No. 21-CV-2421 (ENV) (MMH), 2024 WL 1242639, at *6 (E.D.N.Y. Mar. 22, 2024) (finding that a plaintiff's allegation that a defendant had a policy and practice of failing to compensate for all hours worked in excess of forty hours per week at the proper overtime rate sufficiently established an overtime claim.)  Plaintiff alleges that he worked an average of 52 hours per week, which exceeds the forty (40) hours per week necessary to assert an overtime claim.  *See* Dkt. No. 1, at ¶ 23.  Plaintiff also alleges that he was not paid at an overtime rate of one-and-a-half times his regular rate of pay;

rather, he was paid a flat rate of $800 per week, regardless of the number of hours worked. *Id.* at ¶ 24.

Accordingly, Plaintiff's recollection and estimates of hours worked and wages earned is sufficient information to support a reasonable inference that an overtime wage violation occurred.

**b.    Spread-of-Hours**

Plaintiff seeks reimbursement for the additional hours worked pursuant to the NYLL's spread of hours requirement. Under the NYLL, an employee is entitled to earn an additional hour of pay at the minimum wage for each day on which that employee works more than ten hours. 12 N.Y.C.R.R. § 142-2.4. Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty." 12 N.Y.C.R.R. § 146–1.6; *Baltierra v. Advantage Pest Control Co.*, No. 14-CV-5917 (AJP), 2015 WL 5474093, at *6 (S.D.N.Y. Sept. 18, 2015).

Only employees who make minimum wage or less are eligible for spread-of-hours pay. *Id.*; *see also Fermin*, 93 F. Supp. 3d at 45-46 ("A limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff not earn more than the minimum wage."); *Pinovi v. FDD Enters., Inc.*, No. 13-CV-2800 (GBD) (KNF), 2015 WL 4126872 at *5 (S.D.N.Y. July 8, 2015) ("[R]ecent case law has been nearly unanimous that the spread-of-hours requirement extends only to workers paid at the minimum wage level."); *Fu v. Pop Art Int'l Inc.*, No. 10-CV-8562 (DLC) (AJP), 2011 WL 4552436 at *6 (S.D.N.Y. Sept.19, 2011), *report and recommendation adopted as modified on other grounds*, 2011 WL 6092309 (S.D.N.Y. Dec.7, 2011); *Zubair v. EnTech Eng'g P.C.*, 808 F. Supp. 2d 592, 601 (S.D.N.Y.2011) (New York's spread of hours provision "is properly limited to those employees who receive only the minimum compensation required by law."); *Franklin v. Breton Int'l, Inc.*, 06-CV-4877, 2006 WL 3591949 at *4 (S.D.N.Y. Dec.11,

2006) ("The spread of hours provision in the New York regulations requires an additional hour's pay at the 'basic minimum hourly wage rate' for any day where the spread of hours in a day exceeds ten hours. The provision, however, applies only to workers earning the minimum wage.").

The New York State Department of Labor states "[i]t is important to note that the 'spread -of-hours regulation does not require all employees to be paid for an additional hour, but merely that the total wages paid be equal to or greater than the total due for all hours at the minimum wage plus one additional hour at the minimum wage." *Singh v. Patel*, No. 12-CV-3204 (SJF) (ETB), 2013 WL 2190153, at *2 (E.D.N.Y. May 16, 2013) (internal citation omitted); *Leon v. Zita Chen*, No. 16 CV 480, 2017 WL 1184149, at *7 (E.D.N.Y. Mar. 29, 2017) ("Courts, however, have given deference to the New York State Department of Labor's interpretation that spread-of-hours does not apply to an employee whose workday is in excess of ten hours if his or her total daily compensation exceeds the New York State Minimum wage multiplied by the number of hours he or she worked plus one additional hour at the minimum wage.")

Here, Plaintiff fails to assert that he would have been eligible for spread-of-hours compensation. Plaintiff, who notably *does not* bring a minimum wage claim, asserts that he was paid a "flat weekly salary of approximately $800.00 per week for all hours worked during his employment with the Defendants." Dkt. No. 1, at ¶ 24. Plaintiff, by not bringing a minimum wage, appears to allege that while the flat weekly salary of $800.00 covered his wages up to forty (40) hours per week, he was not compensated for the "approximately fifty-two (52) hours of more [] per week" that he worked between August 2022 and July 2023. *Id.* at ¶ 25. In other words, Plaintiff is clearly only seeking to recover unpaid overtime wages for the additional 12 hours per week for which overtime wages were not remitted. Plaintiff's arguments are further bolstered through the assertion of an overtime claim under both the FLSA and the NYLL. *Id.* at ¶¶ 44-54.

But Plaintiff was paid well-above the minimum wage. A simple calculation of Plaintiff's hourly wages ($800.00 per week divided by 40 hours per week) confirms that Plaintiff was compensated at a rate of $20.00 per week. The Court's calculations are indeed confirmed by Plaintiff's *own* calculation of damages where Plaintiff asserts that his "converted hourly rate" was $20.00 per hour. *See* Dkt. No. 15-7. "Under New York law, the applicable minimum wage rate is determined by the size and location of the employer and the dates of the plaintiff's employment." *Esquivel*, 2023 WL 6338666, at *8 (E.D.N.Y. Sept. 29, 2023) (citing N.Y. Lab. Law § 652(1)(a)(ii); 12 N.Y.C.R.R. § 146-1.2(a)(1)). Plaintiff's Complaint asserts that "Defendants employed approximately 10 or more employees within the relevant time period . . . ." Dkt. No. 1, at ¶ 34.

Defendants are thus classified as "large employers" and are subject to the New York City rates for minimum wage. N.Y. Lab. Law § 652(1)(a)(i); *see also* Dkt. No. 1, at ¶ 8 (noting that Defendants are operating their business within the City of New York). Where the relevant period in this action is August 2022 to July 2023, the minimum wage under New York law was $15.00 per hour at all relevant times. *Id.* at ¶ 23; N.Y. Lab. Law § 652(1)(a)(i).

Simply put, Plaintiff—by his own admission—earned $20.00 per hour during the relevant period where the minimum wage was $15.00 per hour. Dkt. No. 15-7. Therefore, Plaintiff would have been ineligible for spread-of-hours compensation because Plaintiff earned more than the minimum wage. *See e.g., Sosnowy v. A. Perri Farms, Inc.*, 764 F.Supp.2d 457, 474 (E.D.N.Y.2011) ("'[T]he spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law.'"); *Almeida v. Aguinaga*, 500 F.Supp.2d 366, 370 (S.D.N.Y. 2007) ("[N]o group of well-paid workers is carved out from getting

more 'minimum' pay, because the spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law.").

Accordingly, this Court respectfully recommends that Plaintiff's request for spread of hours damages be denied.

### c.    Statutory Penalties

NYLL § 195(1) requires employers to provide employees at the time of hire with a wage notice containing, *inter alia*, the rate of pay, the basis thereof, and pay schedule.  NYLL § 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.

Plaintiff alleges that Defendants violated both provisions because he did not receive a wage notice at the time he was hired or any time during his employment in English or his primary language, Spanish.  Dkt. No. 1, at ¶ 28.  Plaintiff also alleges that he did not receive written wage statements with his pay.  *Id.* at ¶ 29.  While Plaintiff sufficiently pleaded that Defendants failed to comply with NYLL § 195(1) and § 195(3), Plaintiff nevertheless lacks standing to maintain these claims.  *See* Section III.A.i, *supra*.  As explained above, Plaintiff fails to allege an injury in fact sufficient to confer standing and has not demonstrated how his lack of notice or wage statements resulted in an injury greater than Defendants' wage violations.

### viii.    Collective Action Certification

Plaintiff's Complaint states that he seeks to prosecute this action as a FLSA Collective Action.  *See* Dkt. No. 1, at ¶¶ 32-43.  The FLSA authorizes employees to sue on behalf of themselves and all other similarly situated employees.  29 U.S.C. § 216(b).  To join in the action,

other employees must "opt in" by written consent. *Id.* If the plaintiff makes a factual showing that they and the potential opt-in plaintiffs were victims of a common unlawful policy or plan, the court conditionally certifies the action as a FLSA collective action by sending notice to potential plaintiffs who may be similarly situated. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). After those plaintiffs have opted in, the court determines whether they are in fact similarly situated to the named plaintiff. *Id.*

Since Plaintiff did not reiterate his collective action certification request in his Motion for Default Judgment, the Court considers that request waived. *See, e.g., Cooper v. Fire & Ice Trucking, Corp.*, No. 23-CV-1675 (KAM) (TAM), 2024 WL 3344001, at *9 (E.D.N.Y. July 9, 2024) ("Because Plaintiff did not reiterate his collective action certification request in his Motion for Default Judgment, the Court considers the collective action abandoned."); *Galicia v. 63-68 Diner Corp.*, No. 13-CV-3689 (PKC) (RLM), 2015 WL 1469279, at *1 (E.D.N.Y. Mar. 30, 2015) ("Because Plaintiff now seeks a default judgment and has not reiterated his request for collective action in the present motion, the Court considers Plaintiff's collective action request waived."); *Zabrodin v. Silk 222, Inc.*, No. 22-CV-7064 (KAM) (MMH), 2023 WL 8009319, at *10 (E.D.N.Y. Nov. 20, 2023) (finding that the plaintiff waived a collective action certification request by failing to reiterate this request in the motion for default judgment).

Additionally, where the plaintiff seeks to certify a FLSA collective action and the defendant defaults or in similar situations, other courts in this Circuit have entered default judgments in favor of only the named plaintiffs and have left the defendants the opportunity to defend themselves against claims by future plaintiffs. *See, e.g., Lopic v. Mookyodong Yoojung Nakjie, Inc.*, No. 16-CV-4179 (KAM) (CLP), 2017 WL 10845064, at *2 (E.D.N.Y. Sept. 30, 2017); *Galicia*, 2015 WL 1469279, at *1 (granting default judgment and deeming collective action

certification request waived); *Charvac v. M&T Project Managers of N.Y., Inc.*, No. 12-CV-5637 (CBA) (RER), 2013 WL 6711485, at *3 (E.D.N.Y. Dec. 18, 2013) (denying motion without prejudice and granting leave to amend where plaintiff purported to add "opt-in" plaintiffs unnamed in the complaint).

Here, the Court will proceed only with the named Plaintiff; this Report and Recommendation applies only to Mr. Jimenez and not to any of Defendant's other employees.

***

Accordingly, this Court respectfully recommends that liability be imposed against Defendants for Plaintiff's overtime wage claims but not his spread-of-hours claims. As Plaintiff has established Defendants' liability, the Court turns to request for award for Plaintiff's damages.

### D.    Damages

Because Plaintiff has established Defendants' liability as to Plaintiff's overtime wage claims, the Court must determine whether Plaintiff is entitled to the relief he requests.

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up). Rather, "[t]he [C]ourt must be satisfied that Plaintiff has met the burden of proving damages to the [C]ourt with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (citations and quotation marks omitted). Courts must determine "damages with reasonable certainty," and avoid impermissible speculation. *Pasatieri v. Starline Prod., Inc.*, No. 18-CV-4688 (RPK) (VMS), 2020 WL 5913190, at *2 (E.D.N.Y. Oct. 6, 2020) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

A plaintiff may submit documentary evidence or detailed affidavits to support their damages claim, and the Court may award damages based on the plaintiff's recollection and estimate of hours worked, which are presumed to be correct as a result of the defendant's default. *See, e.g., Brito*, 2022 WL 875099, at *15; *Lopez v. Royal Thai Plus*, LLC, No. 16-CV-4028 (NGG) (SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (a plaintiff "need not compute FLSA damages with precision"), *report and recommendation adopted*, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).

Here, because Defendants have defaulted and no employment records have been produced, the Court will presume the accuracy of Plaintiff's recollection and estimates of hours worked set forth in the affidavits and damage calculations. *See Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 375 (E.D.N.Y. 2022) (calculating damages owed "based partially on the representations" in the complaint as well as plaintiff's damages spreadsheet); *Jin Li v. W. Metal Work & Supply, Inc.*, No. 17-CV-1015 (JBW) (RML), 2019 WL 2436275, at *4 (E.D.N.Y. Feb. 27, 2019) (relying on the plaintiff's recollection of hours worked and wages paid in order to calculate damages). Furthermore, because Plaintiff cannot recover under both the FLSA and NYLL for the same injury, the Court calculates damages under the NYLL, which provides for the greatest recovery. *See Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848 (RRM) (RER), 2022 WL 4646866, at *6 (E.D.N.Y. Aug. 29, 2022), *report and recommendation adopted*, 2022 WL 4662247 (Sept. 30, 2022).

"While courts will often conduct an inquest hearing to determine the appropriate award, such a hearing is not required, and courts have awarded damages by 'rel[ying] solely on the papers provided by plaintiff[s].'" *Int'l Ass'n of Heat & Frost Insulators v. Affiliated Env't Servs. NJ, Inc.*, No. 15-CV-6909 (LTS), 2017 WL 5153565, at *5 (S.D.N.Y. Nov. 6, 2017) (citations omitted).

Here, the Court finds that an inquest hearing is not necessary because "the appropriate award can be determined based on the papers proffered by" Plaintiff. *Id.*

Plaintiff requests a total award of $59,344.62, made up of: (i) unpaid overtime in the sum certain of $18,720.00; (ii) unpaid spread-of-hours compensation in the sum certain of $1,560.00; (iii) liquidated damages in an equal amount in the sum certain of $20,280.00; (iv) $10,000 in damages for Defendants' willful violations of NYLL § 195's Wage Theft Protection Act; (v) attorneys' fees of $7,852.50; and (vi) costs of $932.12. Dkt. No. 15, at 6; Dkt. No. 21. Plaintiff also seeks both pre-judgment and post-judgment interest in its complaint. Dkt. No. 1. But Plaintiff only requests "post judgment interest" in his Affirmation in Support of Motion for Default Judgment (Dkt. No. 15) and proposed default judgment order (Dkt. No. 15-8).

### i.    Plaintiff's Damages

### a.    Overtime Wages

The amount of unpaid overtime wages is calculated by subtracting the amount Plaintiff was actually paid from the amount that he should have been paid under the FLSA and NYLL. *See Cooper*, 2024 WL 3344001, at *10.

To calculate Plaintiff's overtime compensation, the number of hours each Plaintiff worked over forty per week is multiplied by 150 percent of the higher of their regular rate of pay, or the applicable minimum wage. *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM) (RML), 2022 WL 18999832, at *5 (E.D.N.Y. Dec. 13, 2022), *report and recommendation adopted*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023). This results in the amount of overtime compensation owed to plaintiff on a weekly basis. *Id.* To obtain the total overtime compensation owed for each period, the weekly amount owed is multiplied by the number of weeks in that period. *Id.* Any

weekly hours worked in excess of forty (40) are multiplied by the applicable overtime wage rate—1.5 times the applicable wage[4]—and added to the amount of regular wages.

Here, Plaintiff—who is not bringing a minimum wage claim—asserts that he was paid $800.00 per week, an amount which does not reflect work performed above forty (40) hours per week. Dkt. No. 1, at ¶¶ 25-25. Therefore, the Court calculates Plaintiff's regular wages as his weekly wage ($800.00) divided by 40 hours (N.Y. Lab. Law § 160) which amounts to $20.00 per hour. *See also* Dkt. No. 15-7 (Plaintiff's own calculation of damages). Where Plaintiff's regular hourly rate is $20.00 per hour, his overtime wage rate (calculated at 1.5 times the regular wage) is $30.00 per hour.

As outlined in the table below, this Court respectfully recommends that Plaintiff be awarded $18,720.00 in unpaid overtime wages.

| Pay Period | | Weeks in Period | Hours Per Week | OT Hours Per Week[5] | Regular Hourly Rate[6] | OT Rate | Weekly OT Owed[7] | Total OT Owed[8] |
|---|---|---|---|---|---|---|---|---|
| From | To | | | | | | | |
| 08/01/2022 | 07/31/2023 | 52 | 40 | 12 | $20.00 | $30.00 | $360.00 | $18,720.00 |

---

[4] "The FLSA provides that overtime pay should be calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater." *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI)(CLP), 2017 WL 5033650, at *16 (E.D.N.Y. Sept. 22, 2017) (citing 29 U.S.C. § 207; 29 C.F.R. § 778.107). "New York law also requires that employees be compensated at "one and one-half times the employee's regular rate of pay" and provides that the regular rate should be calculated "in the manner and methods provided in" the FLSA." *Id.* (citing 12 N.Y.C.C.R.R. § 142-2.2.).

[5] "OT Hours Per Week" is calculated as 52 hours (average hours worked per week) minus 40 hours (legal work week). See Dkt. No. 1, ¶ 23; N.Y. Lab. Law § 160.

[6] Under the NYLL, the regular hourly wage rate for employee such as Plaintiff who were paid on a weekly basis "shall be determined by dividing the total hours worked during the week into the employee's total earnings." 12 N.Y.C.R.R. § 142-2.16. As Plaintiff was paid a flat rate of $800.00 per week (Dkt. No. 1, ¶ 24), Plaintiff's regular hourly wage rate was $15.38 (i.e., $800 per week divided by 52 hours per week).

[7] "Weekly OT Owed" is calculated as "OT Hours per Week" multiplied by "OT Rate."

[8] "Total OT Owed" is calculated as "Weekly OT Owed" multiplied by "Weeks in Relevant Period."

### b.    Spread-of-Hours Damages

Plaintiff seeks to recover damages for unpaid spread-of-hours compensation.  Dkt. No. 1, at ¶¶ 55-57.  But, as outlined *supra* in Section III.C.iv.b, Plaintiff would not have been eligible to receive spread-of-hours compensation because Plaintiff's wages exceeded the minimum wage. *Baltierra*, 2015 WL 5474093, at *6 (S.D.N.Y. Sept. 18, 2015) (finding that New York's spread of hours provision applies only to employees earning minimum wage); N.Y. Lab. Law § 652(1)(a)(i) (establishing the minimum wage during the relevant period as $15.00 per hour); Dkt. No. 15-7 (calculating Plaintiff's hourly rate as $20.00 per hour).  Therefore, the Court need not calculate Plaintiff's potential spread of hours damages.

### c.    Liquidated Damages

Both the FLSA and NYLL generally provide for double (or "liquidated") damages unless the defendant proves a good faith basis to have believed it was complying with the law.  *See* 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 663(1).  A plaintiff may not recover "duplicative" liquidated damages (*i.e.*, under both the FLSA and NYLL) for the same course of conduct.  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  Courts may, however, decline to award liquidated damages where employers "show[] to the satisfaction of the court" that they acted in good faith and reasonably believed they did not violate the FLSA.  *See* 29 U.S.C. § 260.

The NYLL similarly permits employees to recover "an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due" unless the employer provides "a good faith basis to believe that its underpayment of wages was in compliance with the law."  NYLL § 663(1).  Because "there are no meaningful differences" between the liquidated damages provisions of the FLSA and NYLL, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course

of conduct." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  "In light of the principle that the law providing the greatest recovery will govern, [a] [p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA." *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020) (quotations and citation omitted).

Here, Plaintiff repeatedly alleges that Defendants' misconduct was willful, and that Defendants did not act in good faith.  *See* Dkt. No. 1, at ¶¶ 27, 31, 33, 48, 49, 56.  Moreover, Defendants have not answered or otherwise appeared in this action, so it has forgone its opportunity to prove good faith.  *See Zabrodin*, 2023 WL 8009319, at *11 (citing *Chen v. Oceanica Chinese Rest.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *16 (E.D.N.Y. Mar. 21, 2023).

Thus, as Plaintiff's total compensatory damages are $18,720.00, this Court respectfully recommends that Plaintiff recover "an additional equal amount as liquidated damages" in the amount of $18,720.00.  *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 125 (E.D.N.Y. 2011).

> **d.   Damages for Willful Violations of the Wage Theft Prevention Act**

Plaintiff seeks statutory damages under NYLL's Wage Theft Prevention Act in light of Defendants' willful record-keeping violations.  *See* Dkt. No. 16, at 17.

"Violations of NYLL § 195(1) carry damages of $50 per workday, for a maximum of amount of $5,000." *Flores v. Andy Constr. NY Inc.*, No. 22-CV-06486 (OEM) (JMW), 2024 WL 2940191, at *17 (E.D.N.Y. Apr. 14, 2024) (citation omitted).  "Similarly, violations of NYLL § 195(3) carry damages of $250 per workday, for a maximum amount of $5,000." *Id.* (cleaned up).

As noted above, this Court respectfully recommends that Plaintiff's notice and wage statement claims be dismissed due to Plaintiff's lack of standing.  *See* Section III.A.i, *supra*.  And, as noted above, Plaintiff is not entitled to any statutory penalties stemming from those claims.

Indeed, Plaintiff has failed to plead that he suffered any injury in fact sufficient to satisfy the standing requirement.

Thus, this Court respectfully recommends that Plaintiff be awarded no statutory damages on his claim of a violation of the Wage Theft Prevention Act. But, as set forth in *Flores*, where the court also recommended dismissal of similar claims on standing grounds, if the Court were to find that Plaintiff has standing for his notice and wage statement claims, Plaintiff would be entitled to a statutory maximum of $10,000.00. *See Flores*, 2024 WL 2940191, at *17 ("However, if the Court were to find that Plaintiff has shown liability, Plaintiff would be entitled to the statutory maximum of $5,000 under §§ 195(1), (3), for a total of $10,000.") (citations omitted).

### e.     Pre-judgment Interest

As noted above, Plaintiff seeks both pre-judgment and post-judgment interest in its complaint. Dkt. No. 1. Plaintiff, however, only requests "post judgment interest" in his Affirmation in Support of Motion for Default Judgment (Dkt. No. 15) and his proposed default judgment order (Dkt. No. 15-8). Further, Plaintiff only addressed an award of post-judgment interest in its memorandum of law (Dkt. No. 16).

Because Plaintiff does not advance an argument in support of his request for pre-judgment interest, the Court finds that Plaintiff has abandoned this claim. *See Zepeda v. Halftime Bar & Grill Corp.*, No. 22-CV-2355 (JMA) (SIL), 2023 WL 266504, at *2 (E.D.N.Y. Jan. 18, 2023) ("The Court does not award Plaintiff prejudgment interest because, while she requested prejudgment interest in the operative Complaint, she appears to have abandoned that request in the instant default judgment motion."); *BASF Corp. v. Prime Auto Collision Inc.*, No. 20-CV-4797 (NGG) (RLM), 2022 WL 704127, at *8 (E.D.N.Y. Mar. 9, 2022) ("Although the Complaint requests pre-judgment interest, [] plaintiff's motion for default judgment fails to request pre-judgment interest,

[] and its Proposed Judgment reflects an amount that does not include any pre-judgment interest []. The Court therefore recommends that no pre-judgment interest be awarded to plaintiff."); *Arch Specialty Ins. Co. v. Canbert Inc.*, No. 19-CV-5920 (EK) (PK), 2021 WL 1200329, at *3 n.3 (E.D.N.Y. Mar. 9, 2021) (recommending that claim asserted in complaint but "not discussed in the Motion" for default judgment be deemed abandoned), *report and recommendation adopted*, 2021 WL 1193004 (E.D.N.Y. Mar. 30, 2021); *Time Inc. Retail v. Newsways Servs., Inc.*, No. 16-CV-9479 (VSB) (JLC), 2018 WL 316995, at *4 (S.D.N.Y. Jan. 8, 2018) (deeming abandoned requests in complaint for attorneys' fees, costs, and pre-judgment interest where plaintiff failed to provide legal or documentary support for the requests in its motion for default judgment), *report and recommendation adopted*, 2018 WL 2332067 (S.D.N.Y. May 22, 2018); *Maldonado v. Landzign Corp.*, No. 15-CV-3054 (DRH) (GRB), 2016 WL 4186815, at *4, n.3 (E.D.N.Y. July 14, 2016) (request for pre-judgment interest "deemed abandoned" where made in the complaint but not in papers supporting motion for default), *report and recommendation adopted*, 2016 WL 4186982 (E.D.N.Y. Aug. 8, 2016); *Melgadejo v. S & D Fruits & Vegetables Inc.*, No. 12 Civ. 6852 (RA) (HBP), 2015 WL 10353140, at *2, n.1 (S.D.N.Y. Oct. 23, 2015) (deeming abandoned requests in complaint for pre and post-judgment interest and damages for conversion where the plaintiff did "not seek recovery for these items" in his damages submission), *report and recommendation adopted*, 2016 WL 554843 (S.D.N.Y. Feb. 9, 2016); *Bd. of Trs. of Pointers, Cleaners & Caulkers Annuity Fund, Pension Fund & Welfare Fund v. Harbor Island Contracting, Inc.*, No. 13-CV-6075 (MKB), 2015 WL 1245963, at *2, n.1 (E.D.N.Y. Mar. 16, 2015) ("The Trustees do not pursue this relief in their motion for default judgment, and thus the Court deems this request abandoned.").

Accordingly, this Court respectfully recommends that Plaintiff be awarded no pre-judgment interest.

### f.    Post-judgment Interest

Plaintiff is entitled to post-judgment interest under 28 U.S.C. § 1961(a).  "The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered."  *Duffy v. Oyster Bay Indus., Inc.*, No. 10-CV-3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), *report and recommendation adopted*, 2011 WL 2259749 (E.D.N.Y. June 2, 2011); *see generally Begum v. Ariba Disc., Inc.*, No. 12-CV-6620 (DLC), 2015 WL 223780, at *8 (S.D.N.Y. Jan. 16, 2015) (awarding post-judgment interest in a FLSA and NYLL wage-and-hour case).

Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment."  *Cabrera v. Canela*, 412 F. Supp. 3d 167, 186 (E.D.N.Y. 2019) (quoting 28 U.S.C. § 1961(a)).

Therefore, this Court respectfully recommends that Plaintiff be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961.  *See Fermin*, 93 F. Supp. 3d at 52.

### ii.    Attorneys' Fees

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions."  *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS) (AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020), *report and recommendation adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020).  "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party

requesting fees must submit documentation to support its request." *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 12-CV-2180 (AMD) (PK), 2022 WL 1018791, at *14 (E.D.N.Y. Mar. 16, 2022), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

"The starting point for determining the presumptively reasonable fee award is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Hennessy v. 194 Bedford Ave Rest. Corp.*, No. 21-CV-5434 (FB)(RML), 2022 WL 4134502, at *6 (E.D.N.Y. Aug. 8, 2022) (internal citations and quotation marks omitted), *report and recommendation adopted*, 2022 WL 4134437 (E.D.N.Y. Sept. 12, 2022). "To determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id*. (cleaned up). "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." *Perry*, 2022 WL 1018791, at *14 (cleaned up). Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours. *Id*. "The applicant bears the burden to demonstrate reasonableness." *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD) (MMH), 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023), *report and recommendation adopted*, 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

Here, Plaintiff seeks to recover attorneys' fees from the Defendants. In support of this request, Plaintiff provided the Court with "counsel's billing records, qualifications, and lodestar calculations." Dkt. No. 21. Plaintiff's counsel, Roman Avshalumov, seeks an award of attorneys' fees in the amount of $7,267.50 for 17.1 hours of work performed in this matter at a rate of $425.00 per hour. Dkt. No. 21-1. In addition, Plaintiff seeks an award of $585.00 for 7.8 hours of work perform by a "bilingual paralegal" at a rate of $75.00 per hour.

Courts in the Eastern District of New York have recently awarded hourly rates" from "$70 to $100 for legal support," "$100 to $200 for junior associates," "$200 to $325 for senior associates," and "300 to 450 for partners" in FLSA cases. *Martinez v. New 168 Supermarket LLC*, 19-CV-4526 (CBA) (SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (collecting cases), *report and recommendation adopted*, 2020 WL 5259056 (Sep. 3, 2020).

Mr. Avshalumov has been an attorney for over fifteen years and has represented both plaintiffs and defendant in labor law actions. Dkt. No. 21-2. Mr. Avshalumov has also tried "over 50 personal injury and employment actions" and served as "the senior managing attorney at Helen F. Dalton & Associates, P.C., where he oversees all litigation at the firm, and has done so for over a decade." *Id.* Plaintiff's requested hourly rates of $425.00 per hour for Mr. Avshalumov and $75.00 per hour for the supporting paralegal are in line with rates awarded in this district for attorneys with comparable experience and skill. *See Rodriguez v. Mi Esquina Deli Corp.,* No. 21-CV-760 (RML), 2023 WL 6442939, at *3 (E.D.N.Y. Oct. 3, 2023) (awarding Mr. Avshalumov the requested hourly rate of $425.00 per hour); *Pinto v. Midway Grocery, Corp.*, No. 21-CV-778, 2022 WL 20537490, at *6 (E.D.N.Y. Oct. 14, 2022) ("The Court finds the $425.00 fee per hour for Mr. Avshalumov as a managing attorney . . . to be reasonable."); *Castillo v. J. Coffey Contracting Inc.*, No. 19-CV-5845 (CLP), 2022 WL 603995, at *2 (E.D.N.Y. Mar. 1, 2022) (finding reasonable a rate of $425 per hour for Mr. Avshalumov); *Almond v. PJ Far Rockaway, Inc.*, No. 15-CV-6792, 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018) (awarding hourly rate of $450 to an attorney with seventeen years of experience in employment and wage litigation); *Hall v. ProSource Techs., LLC*, No. 14-CV-2502, 2016 WL 1555128, at *12 (E.D.N.Y. Apr. 11, 2016) (approving a rate of $450 per hour for lawyer with "significant experience litigating FLSA and NYLL wage and hour lawsuits[.]").

The $75.00 per hour rate for the paralegal work is also reasonable.  *See Tarazona v. Rotana Café & Rest. Inc.*, No. 16-CV-76, 2017 WL 2788787, at *2 (E.D.N.Y. June 27, 2017) (finding $75.00 hourly billing rate reasonable for paralegal in FLSA matter).  Accordingly, this Court respectfully recommends that Plaintiff be awarded an hourly rate of $425.00 per hour for work performed by Mr. Avshalumov and $75.00 per hour for work performed by the supporting paralegal.

As to the hours expended in litigating this action, this Court finds that 17.1 hours generally fall within the range of hours regularly approved in FLSA and NYLL default judgment cases.  *See, e.g.*, *Leon v. Chen*, No. 16-CV-480, 2017 WL 1184149, at *10 (E.D.N.Y. Mar. 29, 2017) (finding that 13.51 hours was reasonable in a FLSA/NYLL default judgment motion*); Zhang v. Red Mountain Noodle House, Inc.*, No. 15-CV-628, 2016 WL 4124304, at *7 (E.D.N.Y. July 4, 2016) (approving total of 22.1 hours in default judgment FLSA case), *report and recommendation adopted*, 2016 WL 4099090 (Aug. 2, 2016).

In light of the above, this Court respectfully recommends that Plaintiff's request for attorneys' fees be granted, and that Plaintiff be awarded $7,267.50 for legal work performed by counsel Roman Avshalumov and $585.00 for work performed by a supporting paralegal for a total amount of $7,852.50.

### iii.    Costs

When a party is awarded attorneys' fees, it is also entitled to compensation for "those reasonable out-of-pocket expenses incurred by attorney and ordinarily charged to then clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quotations omitted).  To recover these costs, the plaintiff is required to "submit adequate documentary evidence in support." *Tacuri*

*v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *14 (E.D.N.Y. Feb. 24, 2015).

Here, Plaintiff has provided adequate documentary evidence (including copies of invoices) in support of the requested award of costs. Dkt. No. 21-1. Plaintiff seeks to recover (i) $402.00 for the ECF Filing Fee; (ii) $283.00 for the cost of attempted service and service of process on all Defendants; (iii) $18.00 for the cost of postage stamps, (iv) $163.32 for the cost of "DMV Investigation," and (v) $65.00 for the cost of non-military affidavit—for a total award of $932.12. *Id.* Under both FLSA and NYLL, a prevailing plaintiff is entitled to recover costs from the defendant. *See* 29 U.S.C. § 216(b); NYLL § 663(1). Ordinarily, plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying." *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008). Only those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable. *Moon v. Gab Kwon*, 99-CV-11810, 2002 WL 31512816, at *8 (S.D.N.Y. 2002) (quoting *Kuzma v. IRS*, 821 F.2d 930, 933–34 (2d Cir. 1987)).

The Court deems Plaintiff's costs reasonable and respectfully recommends that Plaintiff be awarded $932.12 in costs.

## IV.    <u>Conclusion</u>

In sum, the Court finds that Plaintiff sufficiently alleges Defendants' violations of the FLSA and NYLL. Accordingly, the undersigned respectfully recommends that the District Judge grant in part Plaintiff's Motion for Default Judgment as follows: (1) a default judgment should be entered jointly and severally against Defendants Green Olive Inc. and Mohamed Naji Saleh; and (2) Plaintiff should be awarded a total award of $46,224.62, made up of: (a) $18,720.00 for unpaid overtime wages; (b) $18,720.00 in liquidated damages; (c) post-judgment interest as set forth in

28 U.S.C. § 1961(a); (d) an award of attorneys' fees totaling $7,852.50; and (e) an award of costs of $932.12.

Additionally, the undersigned respectfully recommends that Plaintiff's spread-of-hours claim pursuant to the NYLL be denied.

Finally, the undersigned respectfully recommends that Plaintiff's fourth and fifth causes of action be dismissed for lack of standing.

A copy of this Report and Recommendation is being electronically served on counsel.  This Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to the following addresses to file proof of service on ECF by July 29, 2024:

Copies shall be served at the following addresses:

Green Olive Inc.
80-45 Kew Gardens Rd 3
Kew Gardens, NY 11415

Mr. Mohamed Naji Saleh
80-45 Kew Gardens Rd 3
Kew Gardens, NY 11415

Mr. Mohamed Naji Saleh
8715 Dennison Street
Detroit, Michigan, 48210-1829

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). See also Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Donnelly.  Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v.*

*Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010);

*Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. 2023); *see*

*also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    Brooklyn, New York            **SO ORDERED**.
          July 28, 2024

                                          /s/ *Joseph A. Marutollo*
                                        JOSEPH A. MARUTOLLO
                                        United States Magistrate Judge